**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL STOKES,

      Petitioner,                       Civil No. 2:07-CV-11341
                                           HONORABLE ARTHUR J. TARNOW

v.

DEBRA SCUTT,

      Respondent,

_____/

**OPINION AND ORDER CONDITIONALLY**
**GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS**

      Michael Stokes, ("Petitioner"), presently confined at the Parnall  Correctional

Facility in Jackson, Michigan, has filed a petition for writ of habeas corpus pursuant to

28 U.S.C. § 2254. [1]  In his application, filed *pro se*, petitioner challenged his convictions

for assault with intent to do great bodily harm less than murder, M.C.L.A. 750.84; and

being an habitual offender, M.C.L.A. 769.12.  This Court finds that petitioner did not

voluntarily, or knowingly and intelligently waive his Sixth Amendment right to be

represented by counsel at his trial.  Because this is a structural error, reversal of

petitioner's conviction is automatic.  The petition for writ of habeas corpus is therefore

**CONDITIONALLY GRANTED.**

_____

     [1]  When petitioner originally filed his petition for writ of habeas corpus, he was
incarcerated at the Macomb Correctional Facility, but has since been transferred to the
Parnall Correctional Facility.  The only proper respondent in a habeas case is the
habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner
would be the warden of the facility where the petitioner is incarcerated. *See Edwards
Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. §
2254.  Therefore, the Court substitutes Warden Debra Scutt in the caption.

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

## I. Background

Petitioner was originally charged with assault with intent to commit murder. Following a jury trial in the Wayne County Circuit Court, in which petitioner represented himself, petitioner was convicted of the lesser included offense of assault with intent to do great bodily harm less than murder.

On the first morning of trial, defense counsel informed the trial court judge that when he had visited petitioner in jail a few days prior to trial, petitioner gave him a list of questions that he wanted counsel to ask the witnesses, as well as a proposed closing argument. Counsel informed the judge that petitioner was upset because counsel told him that he would not be limited by petitioner's proposed questions or arguments. Counsel informed the judge that petitioner either wanted a new lawyer or wanted to represent himself. Counsel indicated:

> MR. HARRIS [defense counsel]: Your Honor, a few days ago I met with Mr. Stokes. And he submitted to me several pages of questions which he has asked me to direct to the witnesses in this matter. He's also written out a closing argument, which he has requested that I give.
>
> I told Mr. Stokes that while I appreciated his assistance, I was not going to be limited to the questions he propounded or the argument that he prepared.
>
> I told that again to Mr. Stokes today. And Mr. Stokes is upset. He thinks I am not properly representing him. And he wants either another lawyer or he wishes to represent himself.
>
> (Trial Tr., 10/12/2004, pp. 4-5).

After hearing some comments by the prosecutor, the trial judge indicated that: "In terms of appointing a new attorney, we're not going to do that at this point." (*Id.* at p. 6).

2

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

The judge asked petitioner if he understood that he had a right to an attorney.  In response,

the following exchange occurred between the judge and petitioner:

> MR. STOKES: But, your Honor, I talked to Mr. Harris a couple of days ago, maybe about a week ago.  And, you know, we discussed the---- I discussed the case.  He didn't come and discuss anything.  He didn't have any plan, no game plan.  And I had put together a game plan for us.  And, you know, he said, well, I want to look this over.  I said, well, this is what I want you to do.  And clearly I did it correctly.  I was a paralegal.  I didn't throw a bunch of junk at him.  I wanted him to ask the questions that I asked him to ask and close with my argument, you know.
>
> I feel that, you know, he hasn't been representing me properly thus far, because they bound me over when they had the argument, the prosecution has the argument about if the crime committed, and I committed it.
>
> Well, the witness clearly stated that he turned around and assaulted me.  He turned around and assaulted me.  My lawyer, he didn't challenge this.  And he just let it slide.
>
> THE COURT: Mr. Stokes, you have to understand Mr. Harris didn't make that determination.  That was the judge below that made that decision.
>
> MR. STOKES; Yeah, but he didn't----he didn't object.  He didn't have anything, no ammunition.
>
> THE COURT: Well, he could jump up and object all he wanted to, but the judge is going to make the decision the judge is going to make.  And he can't jump up.  But again the----
>
> MR. STOKES: But, you know, I did my research as a layman.  And I think if I came up with, you know, come to that conclusion, then a person like him would come to one, you know.  I just feel like I wasn't having, you know, him to represent me the way I want him to represent me.  Just ask the questions that I ask him to ask and close in the argument that I choose to ask him to close in.
>
> You know, I'm going to pay the consequences.  I think I got a right.  You know, I think that it's to my disadvantage to have him go and do and say what he want to say.

3

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

You know, he told me this morning that I don't think you should take a jury trial. I think you should take a bench trial. You know, and that---- I think that's ridiculous.

Why would I, you know, take it at this stage? You know, all the way down to the last moment and change for a jury trial to a bench trial.

THE COURT: All right. Here is what----

MR. STOKES: And he say that he don't think that, you know, that I would be found---- I'd be innocent, you know. I mean, well, I don't expect him to----

THE COURT: Mr. Stokes, here is what we're going to do. The Court is going to look into the matter. All right?

MR. STOKES: Okay.

THE COURT: And you need to give me a few moments to do that. And I'm going to look at a few things back in chambers on the matter. And then I will bring you back out. And I do want to question you about your attorney position.

All right?

MR. STOKES: Would you please look at the questions that---- and the argument that I just asked him.

THE COURT: All right. We'll do that.

MR. STOKES; To show you that I'm in my right mind.

(*Id.,* pp. 6-9).

The judge asked the prosecutor and defense counsel to come into chambers with him to review the questions that petitioner wanted to have asked. Significantly, however, petitioner was not brought into chambers to be present for these discussions. (*Id.* at pp. 9-10). There was no record made of the discussion.

4

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

After a recess, the judge again advised petitioner that he had a right to counsel.

However, when petitioner again indicated his dissatisfaction with counsel's decision not to

ask any of his questions, the following exchange occurred:

> THE COURT: Do you want a lawyer to represent you?
>
> MR. STOKES: Mr. Harris, he refused to ask the questions that I asked him to ask.
>
> THE COURT: All right.
>
> Do you want to represent yourself I understand?
>
> MR. STOKES: I'm saying that he refused to ask those questions.
>
> Mr. Harris?
>
> THE COURT: Mr. Harris isn't going to be asking the questions that you propounded.
>
> MR. STOKES: Yeah, yes, sir.  I'd like to represent myself.
>
> THE COURT: You've been appointed a lawyer.  That lawyer in his or her discretion makes certain trial strategy calls.  And this isn't the flavor of the week, that you can pick your lawyer.  You have a very good lawyer.
>
> MR. STOKES: I'll represent myself, sir.
>
> (*Id.* at pp. 10-11).

The judge proceeded to advise petitioner of the dangers of self-representation. (*Id.*

at pp. 11-18).   However, when asked again whether he wanted to represent himself,

petitioner informed the judge:

> MR. STOKES: *Well, I don't feel I have a choice, your Honor.*  I don't feel----I mean, it's like all that on the line that you're telling me that I'm facing.  And I'm just going to---

5

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

THE COURT: Well, we have clients that come in here each and every day with their attorneys.  And the attorneys handle those cases.

MR. STOKES; Well, we didn't have the time to talk.  And at no point did he bring any defense.  He didn't suggest any defense.  I had to do the research and do the work.

(*Id.* at p. 19).  (Emphasis added).

The judge did not elaborate as to why counsel would not ask the questions that petitioner wanted asked, nor did the judge ever make a record of what was discussed between himself, the prosecutor, and defense counsel in chambers concerning petitioner's complaints about his counsel's performance.  The judge never made any findings regarding petitioner's complaints about counsel.  The judge did permit petitioner's attorney to remain as standby counsel and actually allowed him to conduct the *voir dire.* (*Id.* at pp. 15-16, 21).

The complainant testified that he had been drinking alcohol and consuming drugs with several people including petitioner on the day of the incident. (*Id.* at p. 107).  The complainant and petitioner went to the store and bought additional alcoholic beverages, which they took to a park and drank. (*Id.* at p. 108).  After finishing the beverages, the complainant decided to leave.  As he was leaving, petitioner asked him for money. (*Id.* at p. 110).  The complainant informed petitioner that he did not have any more money and turned to leave.  As he did so, the complainant felt a pinch in his back and petitioner grabbing him. (*Id.* at p. 112).  The complainant turned towards petitioner and the men began to fight.  As the complainant separated away from petitioner, he noticed that he was bleeding. (*Id.* at p. 116).  Petitioner fled the scene, while the complainant walked to

6

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

a nearby hospital, where he collapsed.  The complainant was stabbed numerous times in the back, chest, and abdomen.  The complainant also suffered defensive wounds to his arms and wrists. (Tr. 10/13,2004, p. 66).

Petitioner's conviction was affirmed on appeal. *People v. Stokes,* No. 258928 (Mich.Ct.App. April 25, 2006); *lv. den.* 476 Mich. 868; 720 N.W. 2d 314 (2006).

On March 7, 2007, petitioner filed a petition for writ of habeas corpus, in which he sought habeas relief on the following four grounds:

> I. There was constitutionally insufficient evidence admitted at trial to justify consideration of assault with intent to murder charges.
>
> II. Petitioner's trial was rendered unfair by the omission of a necessary jury instruction regarding the reliability of the victim's testimony.
>
> III. Petitioner's trial was rendered unfair by the omission of a necessary jury instruction regarding self-defense.
>
> IV. There was constitutionally insufficient evidence admitted at trial to support Petitioner's conviction.

Respondent filed an answer to the petition for writ of habeas corpus, in which he argued that petitioner's first, third, and fourth claims were without merit and that petitioner's second claim was procedurally defaulted.

In reviewing the trial court record to determine the validity of petitioner's claims, as well as the affirmative defenses raised by respondent, this Court became aware of a fact that was not brought to its attention by either litigant, or noted by the Michigan Court of Appeals in their opinion, namely, that petitioner represented himself at trial, after expressing dissatisfaction on the first day of trial with his trial counsel's representation.

7

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

The issue concerning counsel was raised for the first time in the Michigan Supreme Court on leave to appeal after the Court of Appeals affirmed on the other grounds. *People v Stokes*, 476 Mich 868; 720 N.W. 2d 314 (2006). This Court entered an opinion and order holding the petition for writ of habeas corpus in abeyance to permit petitioner to return to the state courts to exhaust additional claims, specifically his claim that he did not knowingly and intelligently waive his right to counsel. The Court also administratively closed the case. *Stokes v. Wolfenbarger,* No. 2008 WL 495371 (E.D. Mich. February 20, 2008).

Petitioner filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Stokes,* No. 04-07072-01 (Third Circuit Court, May 20, 2008). The Michigan appellate courts denied petitioner leave to appeal. *People v. Stokes,* No. 286305 (Mich.Ct.App. January 22, 2009); *lv. den.* 485 Mich. 883; 772 N.W. 2d 55 (2009). The Supreme Court order noted the waiver of counsel issue was raised in the first application for leave to appeal.

On November 9, 2009, this Court granted petitioner's motion to reopen the habeas petition and also permitted him to amend his petition for writ of habeas corpus to add a claim that he did not knowingly and intelligently waive his Sixth Amendment right to trial counsel.

Petitioner now seeks habeas relief on the following five grounds:

I. There was constitutionally insufficient evidence admitted at trial to justify consideration of assault with intent to murder charges.

II. Petitioner's trial was rendered unfair by the omission of a necessary jury instruction regarding the reliability of the victim's testimony.

8

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

III. Petitioner's trial was rendered unfair by the omission of a necessary jury instruction regarding self-defense.

IV. There was constitutionally insufficient evidence admitted at trial to support Petitioner's conviction.

V. Petitioner did not knowingly and intelligently waive his Sixth Amendment right to counsel.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

9

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state

court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision."

*Harrington v. Richter*, 131 S.Ct.770, 786 (2011)(citing *Yarborough v. Alvarado*, 541

U.S. 652, 664 (2004)).

### III.  Discussion

**Petitioner did not knowingly and intelligently waive his Sixth Amendment right to counsel.**

Petitioner contends that he did not knowingly and intelligently waive his Sixth

Amendment right to counsel because he was forced to represent himself at trial when

the trial court refused at the outset of trial to consider petitioner's request for a new

attorney or to review and respond to petitioner's complaints about his trial counsel.

Respondent contends that petitioner's waiver of counsel claim is procedurally

defaulted, because he raised it for the first time in his post-conviction motion for relief

from judgment and failed to show cause for failing to raise this issue in his appeal of

right, as well as prejudice, as required by M.C.R. 6.508(D)(3).  Michigan Court Rule

6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for

relief from judgment alleges grounds for relief which could have been raised on direct

appeal, absent a showing of good cause for the failure to raise such grounds previously

and actual prejudice resulting therefrom.

Under the procedural default doctrine, a federal habeas court will not review a

question of federal law if the state court's decision rests on a substantive or procedural

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

state law ground that is independent of the federal question and is adequate to support

the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a

procedural default does not bar consideration of a federal claim on either direct or

habeas review unless the last state court rendering a judgment in the case 'clearly and

expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489

U.S. 255, 263 (1989).  The Sixth Circuit has observed that "there must be

unambiguous state-court reliance on a procedural default for it to block" a federal court

from reviewing a state court decision. *Bowling v. Parker*, 344 F. 3d 487, 498 (6th Cir.

2003)(citing *Gall v. Parker*, 231 F.3d 265, 321 (6th Cir. 2000)).

In the present case, the trial court, after deciding the merits of petitioner's claim,

invoked the provisions of M.C.R. 6.508(D)(3) in denying petitioner relief.  The Michigan

Court of Appeals rejected the petitioner's post-conviction appeal in a form order on the

ground that "the defendant has failed to meet the burden of establishing entitlement to

relief under MCR 6.508(D)."  The Michigan Supreme Court, however, in *lieu* of

employing their standard form order denial, issued the following order in denying

petitioner's post-conviction appeal:

> On order of the Court, the application for leave to appeal the January 22,
> 2009 order of the Court of Appeals is considered, and it is DENIED,
> because the defendant has failed to meet the burden of establishing
> entitlement to relief under MCR 6.508(D).  **We write further only to
> comment on the unusual posture of this case.**
>
> Defendant was convicted of assault with intent to commit great bodily harm,
> MCL 750.84, after representing himself at trial.  He was given a prison
> sentence of 10 to 20 years as a fourth-offense habitual offender, MCL
> 769.12.  Defendant raised five issues in his appeal by right to the Court of
> Appeals, which court affirmed his conviction.  Defendant then raised six

11

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

issues in his appeal to this Court. For the new issue, defendant stated: "I feel that I was denied assistance of counsel for my defense at trial." Defendant elaborated upon this, contending that he had been compelled to represent himself because the judge made it clear that he either had to do this or else retain his current counsel. He argued that his request to represent himself was not unequivocal as required by *People v. Anderson*, 398 Mich. 361, 247 N.W.2d 857 (1976). This Court denied defendant's application.[2]

Defendant then filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. Defendant raised several issues in this petition, but did not raise the 'waiver of counsel' issue. Nevertheless, the district court raised the issue sua sponte. *Stokes v. Wolfenbarger*, 2008 WL 495371, 2008 U.S. Dist LEXIS 12300 (2008), asserting that defendant "has never presented any claim to the state courts which challenges the validity of the waiver of his right to counsel or that his decision to represent himself may have been forced upon him." The district court then decided to hold defendant's petition in abeyance so that defendant could return to state court and exhaust the 'waiver of counsel' claim. The district court also ordered that defendant could refile an amended petition raising any newly exhausted claims within 60 days of the conclusion of the state post-conviction proceedings.

Defendant then filed a motion in the state circuit court for relief from judgment that raised the waiver of counsel issue. The circuit court denied relief stating,

> There are three main requirements with which a court must comply in this context. First, the defendant's requests must be unequivocal. Second, the defendant must assert his right to self-representation knowingly, intelligently, and voluntarily. In assuring a knowing and voluntary waiver, the trial court must make defendant aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and that his choice is made with eyes open. [*People v. Ahumada*, 222 Mich.App. 612, 564 N.W.2d 188 (1997) ]. Third, the court must establish that the defendant will not unduly disrupt the court while acting as his own counsel. *Id.* In addition, MCR 6.005 requires the trial court to offer the assistance of an attorney and to advise the

---

[2]  This is number V here. (FN added).

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

> defendant about the possible punishment for the charged offense. *Id.*
>
> Here, the record indicates that defendant's request was unequivocal; the court asked defendant if he wished to represent himself and he answered in the affirmative. The defendant further indicated that he had prior work experience as a paralegal and as a result of that experience was capable of preparing his own trial strategy. Further the court advised defendant of his continued right to counsel and that the counsel assigned to his case was one of the "best in the building." The court also advised defendant of the maximum penalty of the crime for which he was charged. A review of the record indicates that the court properly determined that defendant's desire to represent himself was fully knowing and intelligent. As such, there is no violation of defendant's Sixth amendment right to counsel, and his claim in this regard is without merit. [3]

Defendant then filed an appeal in the Court of Appeals raising the 'waiver of counsel' issue, which court denied defendant's application on the grounds that defendant had "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Defendant now seeks leave to appeal in this Court raising the 'waiver of counsel' issue and we deny leave to appeal for the same reason.

*As set forth above, the district court was apparently under the mistaken belief that defendant had not raised his 'waiver of counsel' issue in the state courts.* In any event, having reviewed the written 'waiver of counsel' form signed by defendant on October 12, 2004, and the 24 pages of transcript that consisted of two separate extended discussions with defendant over the course of two days, we agree with the trial court that defendant's waiver was unequivocal. ***Even if this issue was being considered by this Court in the first instance, we would still deny relief from judgment because defendant has not established actual prejudice. MCR 6.508(D)(3)(b).*** In this latter regard, we note that even though defendant represented

---

[3] The Michigan Supreme Court did not indent the portion of this opinion. This Court indented the portion of the Michigan Supreme Court decision that quoted the trial court order so as to delineate the latter court's opinion and order from the remainder of the Michigan Supreme Court's opinion and order.

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

himself at trial, his former counsel conducted voir dire and otherwise assisted him as standby counsel throughout the trial.

*People v. Stokes,* 485 Mich. at 883 (emphasis added).

The Michigan Supreme Court's order was not an unexplained form order, but was obviously a reasoned opinion, therefore, this is the opinion that this Court must look to in determining whether petitioner's claim is procedurally defaulted. In reviewing this order, it is clear that the Michigan Supreme Court did not clearly and expressly invoke the provisions of M.C.R. 6.508(D)(3) to deny petitioner relief. Although the Michigan Supreme Court indicated that they were denying petitioner post-conviction relief pursuant to M.C.R. 6.508(D), they did not indicate under what subsection that they were denying petitioner's post-conviction appeal. Significantly, the Michigan Supreme Court's opinion did not mention petitioner's failure to raise his waiver of counsel claim on his direct appeal as their rationale for rejecting his post-conviction claim. In fact, it appears from the opinion that the Michigan Supreme Court indicated that petitioner had already raised his waiver of counsel claim on his direct appeal, when he raised the claim for the first time in his application for leave to appeal before the Michigan Supreme Court after the Michigan Court of Appeals had affirmed his conviction on his appeal of right. In the middle of the opinion, the Michigan Supreme Court indicated that this Court, in holding the petition in abeyance so that petitioner could return to state court to exhaust his Sixth Amendment claim, "*was apparently under the mistaken belief that defendant had not raised his 'waiver of counsel' issue in the state courts. Stokes,* 485 Mich. at 883. The Michigan Supreme Court subsequently

14

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

indicated that: *"Even if this issue was being considered by this Court in the first*

*instance,* they would still deny relief from judgment because petitioner had not

established actual prejudice, as required by M.C.R. 6.508(D)(3)(b). *Id.* This language

suggests that the Michigan Supreme Court did not deny petitioner's waiver of counsel

claim based on his failure to raise this claim on his direct appeal, but because he

already had raised the waiver of counsel claim previously on his direct appeal before

the Michigan Supreme Court.

Although not expressly invoked by the Michigan Supreme Court in denying

petitioner's post-conviction appeal, this Court notes that M.C.R. 6.508(D)(2) indicates

that a court in Michigan should not grant post-conviction relief if the post-conviction

motion "alleges grounds for relief which were decided against the defendant in a prior

appeal or proceeding under this subchapter, unless the defendant establishes that a

retroactive change in the law has undermined the prior decision[;]" M.C.R. 6.508(D)(2)

is essentially a *res judicata* or law of the case rule, which prevents the relitigation of

claims in a post-conviction motion which have already been decided adversely against

a defendant in a prior appeal. Because the language of the Michigan Supreme Court's

opinion strongly suggests that they rejected petitioner's waiver of counsel because it

had already been raised before them on direct appeal, the Michigan Supreme Court's

reliance on M.C.R. 6.508(D)(2) based on *res judicata* would not bar habeas review of

petitioner's claim on the merits. *See Hicks v. Straub,* 377 F. 3d 538, 558, n. 17 (6th Cir.

2004).

15

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

Moreover, even if this claim could have been dismissed pursuant to M.C.R. 6.508(D)(3), on the ground that petitioner had failed to properly exhaust his waiver of counsel claim in that he raised it only for the first time on his direct appeal before the Michigan Supreme Court, [4] the Michigan Supreme Court's failure to clearly and expressly invoke the cause and prejudice provision of M.C.R. 6.508(D)(3) to deny petitioner's claim precludes a finding that petitioner's claim is procedurally defaulted pursuant to this court rule. *See Skinner v. McLemore,* 425 Fed. Appx. 491, 495-96 (6th Cir. 2011)(claims not procedurally defaulted where the last reasoned state court judgment erroneously invoked M.C.R. 6.508(D)(2) to deny claims that should have been denied pursuant to M.C.R. 6.508(D)(3)).

Moreover, in addition to the fact that the Michigan Supreme Court did not invoke the provision of M.C.R. 6.508(D)(3) to deny petitioner's post-conviction appeal, the Michigan Supreme Court discussed the merits of petitioner's claim at length. The Michigan Supreme Court did not unambiguously invoke the cause and prejudice provision of M.C.R. 6.508(D)(3) to deny petitioner's post-conviction appeal, but instead chose to address the merits of the claim at length and also to mention that petitioner had already raised his claim on direct appeal and that this was not the first instance that they were reviewing the claim. Under the circumstances, the last reasoned state court judgment did not clearly and expressly invoke the cause and prejudice provisions

---

[4] Raising a claim for the first time before the state courts on discretionary review does not amount to a "fair presentation" of the claim to the state courts for exhaustion purposes. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

of M.C.R. 6.508(D)(3) to deny petitioner's claim.  Petitioner's claim is not procedurally

defaulted.   The Court will proceed to review the merits of petitioner's claim.

The United States Supreme Court has held that a waiver of the Sixth

Amendment right to counsel is valid only when it reflects "an intentional relinquishment

or abandonment of a known right or privilege." *Patterson v. Illinois*, 487 U.S. 285, 292

(1988)(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  In other words, the

accused must "know what he is doing" so that "his choice is made with eyes open."

*Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942).  A waiver of a right

to a lawyer will not be lightly presumed and a trial judge must indulge every reasonable

presumption against a waiver. *Brewer v. Williams,* 430 U.S. 387, 404 (1977); *Boyd v.

Dutton*, 405 U.S. 1, 2 (1972); *Johnson v. Zerbst*, 304 U.S. at 464.  Doubts about

whether there has been a waiver must be resolved in favor of the Sixth Amendment.

*See Michigan v. Jackson*, 475 U.S. 625, 633 (1986); *overruled on other grds by

Montejo v. Louisiana,* 129 S. Ct. 2079 (2009).

The U.S. Supreme Court has clearly established that the complete denial of

counsel during a critical stage of a judicial proceeding mandates a presumption of

prejudice. *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000); *Penson v. Ohio*, 488 U.S.

75, 88 (1988); *United States v. Cronic*, 466 U.S. 648, 659 (1984).  The existence of

certain structural defects in a trial, such as the deprivation of the right to counsel,

requires automatic reversal of the conviction because it infects the entire trial process.

*Brecht v. Abrahamson*, 507 U.S. 619, 629-630 (1993).

17

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

A trial court's determination as to the propriety of a defendant's waiver of his Sixth Amendment right to counsel should appear on the record. *See Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001)(citing *Johnson*, 304 U.S. at 465).     Additionally, a court, in order to decide if a waiver of counsel was valid, must look to see if the defendant made the choice with open eyes, or proceeded *pro se* because he felt he had no other choice. *See United States v. Calabro*, 467 F.2d 973, 985 (2nd Cir.1972). Where a criminal defendant decides to represent himself after complaining that his trial counsel is not prepared to go to trial, as was the case here, the defendant's waiver of counsel is not made knowingly and intelligently, with "eyes wide open", because "the choice between unprepared counsel and self-representation is no choice at all." *James v. Brigano*, 470 F. 3d 636, 644 (6th Cir. 2006).

In the present case, petitioner did not clearly and unequivocally waive his right to counsel and choose to represent himself at trial.  Although both the trial court and the Michigan Supreme Court found that petitioner clearly and unequivocally waived his right to counsel, both courts ignored the fact that petitioner appeared before the trial court on the morning of trial and expressed dissatisfaction with his lawyer's representation.  At the outset, before even hearing petitioner's complaints, the trial judge indicated that: "In terms of appointing a new attorney, we're not going to do that [appoint a new one] at this point." (Tr. 10/12/2004, p. 6)  When the judge asked petitioner if he understood that he had a right to an attorney, petitioner told the judge that his defense counsel hadn't discussed anything when he visited petitioner in jail. Petitioner further complained that counsel did not appear to have a "game plan", which

18

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

was the reason that petitioner had prepared some questions for him to ask.  Petitioner

further complained that his counsel did not challenge the bindover decision.  Petitioner

was also upset that his counsel had tried on the morning of trial to get him to waive his

jury and proceed with a bench trial.  The judge agreed to review the questions that

petitioner wanted to have asked, but did so in chambers only with the prosecutor and

defense counsel.  Petitioner was not present. (*Id.* at pp. 7-10).  There is no record of

this discussion.

      After a recess, the judge again advised petitioner that he had a right to counsel.

However, when petitioner again indicated his dissatisfaction with counsel's decision not

to ask any of the questions suggested by petitioner, the judge informed petitioner that

counsel would not ask petitioner's questions.  The judge did not give any reason why

counsel would not ask these questions, nor did the judge ever make a record of what

was discussed between himself, the prosecutor, and defense counsel in chambers

concerning petitioner's complaints about his counsel's performance.  Instead, the judge

scolded petitioner that this was not "the flavor of the week, that you can pick your

lawyer."

      Only at this point did petitioner indicate that he would represent himself. (*Id.,* at

p. 11).  The judge proceeded to advise petitioner of the dangers of self-representation.

(*Id.,* pp. 11-18).  However, when asked again whether he wanted to represent himself,

petitioner informed the judge :"*Well, I feel that I don't have a choice, your Honor.*"

Petitioner again informed the judge that he and his counsel never had any time to talk

and at no point did counsel discuss any defenses with him. (*Id.,* at p. 19)(emphasis

19

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

added).  The judge never made any findings regarding petitioner's complaints about counsel.

When a criminal defendant moves for replacement counsel and is told that he must choose between his current counsel and proceeding *pro se*, his waiver of right to counsel may not be voluntary, depending on the circumstances. *See U.S. v. Patterson,* 140 F.3d 767, 776 (8th Cir. 1998); *See also Gilbert v. Lockhart*, 930 F.2d 1356, 1360 (8th Cir. 1991).  Moreover, a waiver of counsel cannot be inferred from a defendant's desire to dismiss his counsel, when he or she states the reasons for wanting counsel dismissed and expresses wish for legal  representation. See *Sawicki v. Johnson,* 475 F. 2d 183, 184-85 (6th Cir. 1973)(defendant who, in notice of dismissal, complained of inadequate representation by appointed counsel and was advised, without investigation, that other counsel would not be appointed, was entitled to federal habeas corpus hearing on allegations of denial of representation).  In particular, a defendant's waiver of the right to counsel may not be clear and unequivocal in situations like this where the trial court indicates at the outset that it will not appoint new counsel and merely advises the defendant about his desire and ability to represent himself. *See U.S. v. Jones,* 452 F.3d 223, 230 (3rd Cir. 2006).

In the present case, the Michigan Supreme Court unreasonably applied clearly established law in determining that petitioner had clearly and equivocally waived his right to counsel.  Petitioner's waiver of counsel was not knowing and voluntary,

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

because the judge basically offered petitioner a "Hobson's choice" [5] of either proceeding to trial with an attorney whom petitioner felt was unprepared or with no counsel at all. *Gilbert,* 930 F. 2d at 1360.  Indeed, when asked by the trial judge again whether he wanted to represent himself, petitioner informed the judge :"Well, I feel that I don't have a choice, your Honor."  Petitioner's waiver of counsel was not made voluntarily, or knowingly and intelligently, with "eyes wide open", because "the choice between unprepared counsel and self-representation is no choice at all." *James*, 470 F. 3d at 644.

 "When serious allegations are made by an indigent defendant that his appointed counsel is not providing adequate representation, they should not be taken lightly." *Sawicki,* 475 F. 2d at 184.  The trial judge never addressed petitioner's complaints about his attorney but simply stated that his attorney would not ask the questions that petitioner wanted asked and further informed petitioner that he would not appoint new counsel.  In response to the trial judge's question about whether he wanted to represent himself, petitioner indicated that he had no other choice.   Under the circumstances of this case, the record does not support the Michigan Supreme Court's conclusion that petitioner "waived his right to counsel with eyes wide open." *Fowler,* 253 F. 3d at 249; *James,* 470 F. 3d at 644.

―――――――――――――

 [5]  Hobson's choice: [After Thomas Hobson (1544–1631), English liveryman, from his requirement that customers take either the horse nearest the stable door or none.] An apparently free choice that offers no actual alternative. Webster's II, New College Dictionary 526 (1995).

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

In addition, petitioner's case "unfortunately demonstrates the many fair-trial problems that may arise from forced self-representation." *Young v. Lockhart,* 892 F. 2d 1348, 1352 (8th Cir. 1989). Although the Michigan Court of Appeals rejected petitioner's second claim that he raises in this petition on the ground that a cautionary instruction was never requested, petitioner as a layperson may not have known that it is the responsibility of counsel to ask the court to give certain instructions. Likewise, petitioner may not have known that it was important for him to present evidence of self-defense through his testimony or the testimony of other witnesses in order for an instruction on self-defense to be given, rather than to merely argue in closing argument that he had acted in self-defense.[6]

In light of the strong presumption against waiver of the constitutional right to counsel, this Court finds that petitioner did not voluntarily, or knowingly and intelligently waive his Sixth Amendment right to counsel. The decision of the Michigan state courts is an unreasonable application of established Supreme Court precedent. *Fowler,* 253 F. 3d at 250. This Court concludes that petitioner was denied his Sixth Amendment right to counsel when he was compelled to represent himself at trial after being informed by the trial judge that he would not appoint substitute counsel after petitioner had expressed dissatisfaction with his current counsel and without resolving petitioner's complaints about his counsel's representation.

---

[6] This Court is not ruling on these issues.

22

*Stokes v. Scutt,* U.S.D.C. 07-CV-11341

The Court further finds that petitioner is entitled to the issuance of a conditional writ of habeas corpus.  The Court will therefore grant petitioner a writ of habeas corpus conditioned upon the State of Michigan retrying him within 90 days of this Court's decision.

Because this Court's conclusion that petitioner is entitled to habeas relief on his claim involving the denial of counsel is dispositive of the petition, the Court considers it unnecessary to review petitioner's other claims and declines to do so. *See Satterlee v. Wolfenbarger,* 374 F. Supp. 2d 562, 567 (E.D. Mich. 2005).

## IV.  <u>ORDER</u>

**IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED.  UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITH THE ASSISTANCE OF COUNSEL WITHIN NINETY DAYS OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH.**

<u>S/Arthur J. Tarnow</u>
Arthur J. Tarnow
Senior United States District Judge

Dated: November 4, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 4, 2011, by electronic and/or ordinary mail.

<u>S/Catherine A. Pickles</u>
Judicial Secretary

23